UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TATA SONS PRIVATE LIMITED,<br><br>               Plaintiff,<br><br>    v.<br><br>TELANGANA AMERICAN TELUGU ASSOCIATION,<br><br>               Defendant. | Civil Action No. 1:20-cv-8898<br><br>**COMPLAINT** |

Plaintiff Tata Sons Private Limited ("Tata Sons"), for its Complaint against Defendant Telangana American Telugu Association (the "Association"), alleges as follows:

## I.    INTRODUCTION

1. This action arises from Defendant Association's repeated and ongoing infringement of Plaintiff Tata Sons' federally registered trademark TATA (the "TATA mark"), and the Association's failure to abide by its promise to cease that infringement.

2. Tata Sons is the holding company for a global enterprise primarily owned by charitable trusts. These trusts spend hundreds of millions dollars each year on charitable endeavors.

3. The Association has taken advantage of the goodwill and reputation associated with Tata Sons and the TATA mark, using the mark to promote the Association and its events, and to solicit millions of dollars in donations.

4. Tata Sons reached an agreement with the Association in 2015 for it to stop this infringement, but the Association breached that agreement, again infringing the TATA mark.

Tata Sons repeatedly sought the Association's compliance with that agreement for more than a year, but the Association refused.

## II. PARTIES

5.  Plaintiff Tata Sons Private Limited, formerly known as Tata Sons, Ltd., is an Indian company with its principal place of business in Mumbai, India.

6.  Defendant Telangana American Telugu Association is a Virginia nonstock corporation with its principal place of business in Glen Allen, Virginia.

## III. JURISDICTION AND VENUE

7.  This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1338 because this action arises under the laws of the United States, and in particular under an Act of Congress relating to trademarks. The Court has supplemental jurisdiction over the New York common law claim pursuant to 28 U.S.C. § 1367(a).

8.  Personal jurisdiction over the Association is proper because the Association consented to the jurisdiction of this Court in the Parties' December 14, 2015 confidential Settlement Agreement. Venue is proper in this District under 28 U.S.C. § 1391.

## IV. BACKGROUND

### A. Tata Sons

9.  Tata Sons is the principal holding company of the Tata Group, a global enterprise that is one of the largest commercial enterprises in India. The Tata Group is comprised of 30 companies in industries ranging from telecommunications to automobiles to consumer products. These companies have combined annual revenues of over $100 billion and collectively employ more than 720,000 people.

10. Many of the Tata Group companies operate in the United States, like Tata Consultancy Services, Jaguar, Land Rover, and Eight O'Clock Coffee.

11. Tata Sons also owns the TATA mark, including all common law rights in the mark, and is the holder of valid federal registrations, numbers 4031815 and 3963247, for the mark.

12. Tata Sons was founded in 1868 and opened its first offices in the United States in 1945 in New York.  The TATA mark has been in active and continuous use in commerce in the United States since at least that time.

13. In addition to its commercial holdings, Tata Sons also performs significant philanthropic work, including in the United States and India.  Two thirds of Tata Sons is owned by charitable trusts ("the Tata Trusts").  The Tata Trusts are the oldest philanthropic organization in India and collectively spend more than $200 million a year on charitable causes, with a focus on education, health, environment, and empowerment.  The Tata Trusts also partner with other international development organizations, like the Bill and Melinda Gates Foundation, USAID, and the World Bank, as well a range of academic institutions, including Harvard University, the Massachusetts Institute of Technology, and Stanford University.

14. As a result of Tata Sons' charitable and commercial endeavors, the TATA mark has strong name recognition in the United States and is a source of valuable goodwill in a variety of fields, including charitable activities.  Tata Sons has expended significant time, money, and resources marketing and promoting both the Tata Group of companies and the Tata Trusts under the TATA mark.

    **B.**    **The Association**

15. Telangana is a state in south-central India formed by an Act of the Indian Parliament in 2014.

16. Defendant is a non-profit organization formed in 2015 to promote, preserve, and perpetuate the Telangana community in the United States and Canada.

17.     The Association solicits charitable contributions aimed at the same social problems as some of the work of the Tata Trusts, such as helping impoverished Indians and educating children.  The Association refers to its charitable work as "TATA Seva Days."

**C.     Defendant's Unauthorized Use of the TATA Mark in 2015**

18.     In 2015, Tata Sons learned that the Association was using the TATA mark to promote the Association and to solicit donations it said were to be used for charitable purposes. Examples of the Association's unauthorized use of the TATA mark included registering the URL www.tataus.org, and using the mark on its website, Facebook pages, and at various events it organized, hosted, or sponsored.  The Association also used the TATA mark in its logo:



19.     In May 2015, Tata Sons contacted the Association, notified it that its uses of the TATA mark constituted trademark infringement, and asked it to cease those uses.

20.     In December 2015, Tata Sons and the Association entered into a binding, fully integrated settlement agreement (the "Agreement").  In the Agreement, the Association:

    a.     Acknowledged Tata Sons' rights, title, and interest in the TATA mark;

    b.     Agreed not to contest the validity or registration of the TATA mark;

    c.     Acknowledged that it had engaged in unauthorized use of the TATA mark;

      d.      Agreed to desist from further unauthorized use, including using the TATA mark or a confusingly similar mark to promote the Association or its events, sell memberships, or solicit charitable donations; and

      e.      Agreed to cure any breach of the agreement within ten days of receiving notice of such breach.

### D. Defendant Resumes Its Unauthorized Use

21. Despite contracting in the Agreement not to infringe the TATA mark, the Association nevertheless has resumed using the mark in the United States to promote the Association and its events, to sell memberships, and to solicit charitable donations. A few examples of this infringement include:

      a.      Promoting the Association with the TATA mark on the Association's website, http://www.mytelanganaus.org/T.A.T.A/:



b. Using the TATA mark to advertise the Association's "Mega Convention," including by registering the URL https://tataatc2020.org, and including the TATA mark in the convention's logo:



c. Soliciting corporate sponsorships and other donations using the TATA mark:

![Signature block: I DECLARE that I have read and understand the package information, I AGREE all donations are final and no refunds/Exchanges/Cancellations will be accepted. I authorize the above charge and No refunds will be provided for any type of Registrations. I abide by TATA standards, rules and regulations. *Signature ___ *Date ___ For any questions please email us at registration@tataatc2020.org]

![Corporate Sponsor Registration Form: TELANGANA AMERICAN TELUGU CONVENTION, May 22, 23 & 24 2020, New Jersey Convention and Expo Center, 97 Sunfield Ave, Edison, NJ 08837, www.tataatc2020.org, corporate@tataatc2020.org, Hosted By Telangana American Telugu Association (T.A.T.A)]

CORPORATE SPONSOR REGISTRATION FORM

Sponsor Information: *Sponsor Name, *Sponsor Type, *First Name, *Last Name, *Address, *City, *State, *Zip, *Country, *Phone, *Email, *FAX

Corporate Sponsorship Package Details (All package details are available on the 2nd page of this Form)

| Package | Description | Amount Range | Amount |
|---|---|---|---|
| D001 | Corp. Royal Sponsor | $100,000 + | |
| CP02 | Corp. Grand Sponsor | $50,000 - $99,999 | |
| CP03 | Corp. Grand Donor | $25,000 - $49,999 | |
| CP04 | Corp. Grand Benefactor | $10,000 - $24,999 | |
| CP05 | Corp. Benefactor | $5,000 - $9,999 | |

        d.        And using the TATA mark to promote the Association and advertise for Association events on Facebook, YouTube, and other social media sites.

22.        The Association's solicitation of donations using the TATA mark has raised substantial sums.  For example, the Association has publicly claimed that it collected over $1.2 million in donations for its 2018 joint convention with the American Telegu Association; promotional materials for that convention prominently and repeatedly used the TATA mark on the convention website.

23.        Beginning on July 1, 2019, counsel for Tata Sons wrote repeatedly to the Association to provide notice of the Association's material breach of the settlement agreement, and to ask the Association to cure that breach within 10 days, including by ceasing and desisting all use of the TATA mark.

24.        In the weeks leading up to the filing of this complaint, counsel for Tata Sons also repeatedly wrote to and called the Association's President, Bharath Madadi, to again ask the Association to comply with the settlement agreement.  Tata Sons informed the Association that it would file this action if it did not do so.

25.        Despite receiving such notice, the Association has refused to cure its material breach of the settlement agreement and continues to infringe the TATA mark willfully and without authorization.

**V.    CLAIMS FOR RELIEF**

**COUNT I—BREACH OF CONTRACT**
**(NEW YORK COMMON LAW)**

26.        Tata Sons repeats and realleges each and every allegation above as if fully set forth herein.

27. The Association knowingly and voluntarily entered into the Agreement on December 14, 2015.

28. Tata Sons has fully complied with its obligations under the Agreement.

29. The Association has willfully and materially breached its obligations under the Agreement by engaging in unauthorized use of Tata Sons' intellectual property, including the TATA mark, and refusing to cure that breach when notified by Tata Sons.

30. The Association's material breaches of its contractual duties have directly and proximately caused damages to Tata Sons in an amount to be proven at trial.

### COUNT II—TRADEMARK INFRINGEMENT
### (LANHAM ACT, 15 U.S.C. §§ 1114, 1125(a))

31. Tata Sons repeats and realleges each and every allegation above as if fully set forth herein.

32. The TATA mark is distinctive and is widely recognized in connection with both the commercial and charitable endeavors of Tata Sons.

33. The TATA mark has also been registered with the United States Patent and Trademark Office. Tata Sons is the holder of registration numbers 4031815 and 3963247 concerning the TATA mark. These registrations are valid, subsisting, and incontestable.

34. The Association was and is aware of Tata Sons' rights, title, and interest in the TATA mark, having been informed repeatedly in correspondence with Tata Sons in 2015 and 2019–2020, and having expressly acknowledged those rights in the Agreement.

35. The Association knowingly infringed the TATA mark in a variety of promotional materials, including on its website and in social media. This infringement included using the TATA mark to solicit charitable donations for purposes similar to the charitable endeavors of Tata Sons.

36. The Association's actions constitute use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the TATA mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

37. The Association's use of the TATA mark is also likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Association with Tata Sons, or as to the origin, sponsorship, or approval of the Association's goods, services, or commercial activities by Tata Sons, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  On information and belief, the audience for the Association's communications that use the TATA mark consists overwhelmingly of Indian nationals or Indian-Americans who are highly likely to be familiar with the use of the TATA mark by Tata Sons and affiliated entities and charitable endeavors.  Those individuals are likely to believe that the Association's use of the TATA mark connotes that the Association and its activities are affiliated, sponsored, or approved by Tata Sons.

38. As a result of these actions, Tata Sons has been and will continue to be damaged, and the Association has been and will continue to be unjustly enriched, in an amount to be proven at trial.

39. The Association's actions have also caused, and continue to cause, irreparable harm to Tata Sons' rights in its trademark, reputation, and goodwill.  Monetary damages cannot adequately compensate Tata Sons for this harm.  Tata Sons thus has no adequate remedy at law and seeks permanent injunctive relief pursuant to 15 U.S.C. § 1116.

40. Furthermore, the Association's willful infringement of the TATA mark after promising to cease such infringement, and its failure to cease its infringement after receiving repeated notices from Tata Sons, are evidence of the Association's bad faith, making this an "exceptional case" under 15 U.S.C. § 1117, and entitling Tata Sons to reasonable attorney fees.

## VI. RELIEF REQUESTED

41. Tata Sons requests relief as follows:

   a. A permanent injunction prohibiting the Association from marketing, promoting, advertising, or selling any organization, membership, event, product, or service, or soliciting charitable donations, using a mark identical or confusingly similar to the TATA mark, without authorization from Tata Sons;

   b. An award of monetary damages in an amount to be proven at trial;

   c. Pre-judgment and post-judgment interest as permitted by law;

   d. An award of Tata Sons' attorneys' fees, costs, and other expenses; and

   e. Such other and further relief as is just and proper.

Dated: October 23, 2020

WILLIAMS & CONNOLLY LLP

By: /s/ Adam D. Harber
Adam D. Harber (#4487989)
Matthew W. Lachman (*pro hac vice application forthcoming*)
650 Fifth Avenue
Suite 1500
New York, NY 10019
Telephone: (202) 434-5000
Fax: (202) 434-5029
aharber@wc.com
mlachman@wc.com

*Attorneys for Plaintiff Tata Sons Private Limited*